Good morning. May it please the Court. I'm Esther Boynton. I represent Plankinson Appellants Craig and Wendy Humphries in this matter. I'd like to reserve six minutes for rebuttal. That's fine, Counsel. We don't have a mechanism for subtracting it from your time, so you need to watch your own time. When you get down to six minutes, then you'll know it's time for you to stop. Thank you very much. This is an appeal from a partial summary judgment in which the trial court denied the Humphries' injunctive and all other relief regarding their child abuse central investigation and the ongoing availability to a host of third parties of not only the listing itself, which is maintained by the California Department of Justice, but also the underlying files, which include investigation reports and arrest records that were compiled in one week in April 2001 by the Los Angeles County Sheriff's Department. I hate to take any of your time here, but this is a very interesting, difficult case. I have a lot of empathy for your client, but I'm struggling with an issue that I hope you're going to be able to help me with. In the Paul case, the Supreme Court made it very clear that 1983 was not the federal equivalent of a tort claims act, and the way they wanted to avoid that was by saying that you had to have stigma plus. Everybody seems to concede the stigma part here. The problem that I'm wrestling with is the plus part. Our jurisprudence, I'm sure you're very familiar with the cases in Miller, our court did not find stigma. That was a situation where a person wasn't looking for a job or something that required a license for this would be disclosed. In this case, you have more of a Balmonte situation, which is the Second Circuit case. Wendy Humphreys is the teacher. At least as of June 1, 2006, up to that point, she had a license. Let me ask you first, was that license renewed? That happened quite recently, and it's not a matter in this record. I understand that. I just want to know whether she was able to- We underwent all kinds of additional difficulties because not only were we concerned about the index record, but this case also involved the government's continued maintenance of the criminal arrest record. I understand. Ultimately, with more counsel than myself alone, and counsel that worked and negotiated with the commission on teacher credentialing, Mrs. Humphreys was able to get the certificate she needs to maintain her current position in special ed. Okay. Now, Mr. Humphreys, in his declaration, indicated his interest in working with his wife at I think the Florence Crittenden location as a volunteer. Has there been any problem in his being able to do that? Well, we know from the declaration of the person that screens applicants that was provided in the record that if he were to do that, because he still has this index record, he wouldn't be cleared through the index. But he has not applied. And part of this case, this is an injunction case after all, part of the restricted liberty and real, real part of this is that the Humphreys are afraid to apply for certain positions because not just positions, many aspects of their lives, whether they want to get certain jobs or take classes or do many things- We don't have a 1983 action unless we can show the plus. And what the cases seem to show thus far is that the plus has to be that by operation of law, your clients are put in a situation where they not only have the stigma, but they're just caught in a catch-22. They can't get out because by operation of law, they can't get a license without having to reveal or have the agency reveal what's in this list. Is that what your clients have here? This is the stigma plus asserted liberty interest is merely one of five asserted liberty interests. And I'll quickly address why Paul doesn't include it, but I just want to stress that there are four other- Is there any law that mandates that they consult the CACI file before they issue a license? Yes. They must- And what's the law? Health and Safety Code section 1522.1. That section was amended, will be effective as of January 1, 2008. I've provided only today a letter brief to the court to give the updated section. I didn't include that particular provision because amendments in that provision are not particularly germane. There are other amendments- Okay, but what does that section provide? That section requires that prior to licensing for child care for various things that require contact with children, that the licensing agency, which is typically the State Department of Social Services or a contracting local agency that conducts that kind of investigation for the state, must access the child abuse index. Also, it's not just with respect to licensing in child care. In our reply brief, we respond, and we also brought it up in the opening brief, to the government's argument that the Humphreys are not affected in terms of child placement. That is, there is another statute, the Welfare and Institutions Code section 361.3 and 361.4 require a search of the index, and the regulations of the Department of Social Services say- Is that a welfare code? Welfare and Institutions Code. I apologize, but I need to bring a glass of water to the left. Is it clear what the law- I've got a copy of 1522.1, and it does require the licensing agency to consult the CACI, but I don't see any place in the law that it tells you what you do with the information that you get. All right, there are regulations that do tell you, and with respect to licensing, there is not a specific bar. There is an almost bar. It says, the license shall not be denied unless child abuse is found to be substantiated. The statute also requires that the underlying investigative file, in this case, the Los Angeles Sheriff's Department file that contains the arrest records and the false allegations that have since been adjudicated not true, it is that file from April 2001 that must be consulted. It is all inculpatory. There is no exculpatory information and no information subsequent to April 2001. Can I just ask you this one thing? I don't want to go away from the plus issue, but you just raised something that bears on this other issue. I read the juvenile court record, ordering expungement and so on, and that dealt with the PC-208 allegation, not the 273.1. So that means that that portion of the charge, which was dismissed in the interest of justice, was not ordered, expunged, or sealed. Isn't that correct? Your Honor, no, it is not correct, but for two reasons. First of all, there are two orders of two courts, two state courts. The one the court is referring to now is the order that was made under Penal Code Section 851.8 by the criminal court. That 851.8 has very specific language in it. We go through line by line that language in our reply brief. 851.8 says that if you are found factually innocent of the charge for which you were arrested, all arrest-related records are removed. In this case, all reports underlying the index listing were prepared as of April 17. At that point, the Humphreys were arrested solely for one charge, and throughout this case were arrested, as the district court found, on one charge alone. That's not what the county says in its brief. It says that they were arrested for both charges at the same time. Do you dispute that? We dispute it. Were they arrested two different times? No. The district court found a fact. The court said the Humphreys were arrested solely on one charge, torture, felony, Penal Code Section 206. The Humphreys never were arrested on any other charge. The record includes the booking record. The record includes the investigative report that was prepared by the Sheriff's Department. Subsequent to that arrest, the county argues that the probable cause arrest warrant somehow affected an additional charge. The probable cause arrest warrant was never served on the Humphreys, and it affected no charge by operation of law. Under the Penal Code, that kind of probable cause arrest warrant cannot affect an arrest charge. It just cannot. And so there was only one arrest charge. The statute requires an expungement of all records, but that is still different from the order of the juvenile court. The juvenile court only dealt with 206, right? No, the juvenile court had nothing to do with the criminal code at all. The juvenile court addressed the very same allegations and the very same reports on which the index listing was created. April 17, 2001. I just want to add something. All investigation reports on which this listing were created were made by April 17. There was no misdemeanor charge until the following day. That is, as of the time the report to the Department of Justice was made, there was no misdemeanor charge. There was never a misdemeanor arrest. The misdemeanor charge was filed on April 18, and the juvenile dependency petition was filed on the 17th. Correct, but the juvenile dependency petition really doesn't relate to the misdemeanor charge. It relates only to those same investigation reports that were part of the investigative file that underlies the index listing and that was the basis for the dependency petition. There are two different worlds operating here. The criminal case, and that's the one that involves penal code, Section 851.8 ceiling order, as well as the underlying 206 charge. The only reason there was ever a misdemeanor charge was because, and this is in our supplemental excerpts, the prosecutor told the detective there was no evidence to go forth on, they would not prosecute for a felony. And the day after they were reported to the index, the Humphreys were charged through a complaint, a misdemeanor complaint. And that was the 273A? So that didn't even arise until after the index listing. It stemmed from the very same arrest and the very same investigation. And because of that, 851.8 requires, on the finding of factual innocence for the arrest charge, that all arrest-related records be expunged. You can't do it partially, as the appellate court has said in California. The statute doesn't allow for surgical excision if only part of an arrest record, because the arrestee has the right to say he was never arrested. And if you leave any records open that relate back to those arrest records, you've vitiated that right. The juvenile court, though, involves exactly the same allegations, exactly the same evidence, and it doesn't involve any penal code provision. That's the Welfare and Institutions Code, and it's Section 300. So under 300, several different charges were brought against the Humphreys, one of which is subpart J of 300, which is abuse of sibling. That is, the Humphreys' other two children had been put in foster care, had been removed from the Humphreys, based on the allegation that the abuse of those two children's sibling, we call her S.H. in this case, that endangered them, that the sibling had been abused. So the very question of whether or not this sibling had been abused was adjudicated by the court, the juvenile court. The very same question. As of June 2001, the allocations were adjudicated. Not true. Okay, but now, the 273A, according to what I saw, said that it was, in quotes, dismissed in the interest of justice. That was not adjudicated, was it? The misdemeanor complaint, which arose after the index listing, out of the same arrest that led to the index listing, was dismissed in the interest of justice, but again, does not control the investigation records on which the index listing arises. The reason the 851.8 expunging order of the criminal court is relevant to this case is not because of the kind of adjudication of the underlying facts that happened in the juvenile court. Rather, the Humphreys have a protected, constitutionally protected, property interest and liberty interest under 851.8 and the order of the court, which requires and leaves no room for any discretion, requires that all records related to that arrest be sealed and expunged. We had a stipulation signed by the district court in this case because that section, 851.8, has a subpart, which is K. It says, you know, if you've got a factual innocence finding and a sealing order, the sealing order and the records to which the order applies need to be sealed and expunged. This would get in the way of litigation if you were going to litigate against the very agency that caused, as we did here, the arrest. There is an order which requires the sealing and expungement of all records related to the arrest. I know about the one for 206. Where in the record is the document relating to the 273A charge? It's the very same document. It is the sealing order. But it only refers to 206. No, it refers to 206 as the arrest charge, Your Honor, because that's... It's a torture charge. That's what it says. It's the only charge for which the Humphreys were arrested under 851.8 and it's a DOJ form. That's a... Right. A DOJ form asks for the charge for which you're arrested as a matter of law if you are found factually innocent of that charge. You're saying the 273 occurred later. So where is the document that expunges 273A's records? There is no arrest record for 273A. I don't care about the arrest. The only thing that matters to us in this case, the only relevant file for the index and the underlying file, all were created with respect to the torture charge, the only charge that existed at the time those records were created. There is no provision in 851.8 for reduced charges that emanate from any arrest. And it makes sense because you could always... I hear what you're saying, counsel, but I am not satisfied on that issue yet. It's important for me to know that there is an expungement and sealing document for the 273A. That's abuse of a child. And when you look at the record regarding what the Utah authorities said, what Wilson talked about with them, the taped interview, all that sort of thing, the testimony of the other two children, there was certainly something there that allowed somebody to make an initial charge. Now, you're saying that they were arrested for only the torture charge. I don't find that in the record. And I don't find anything in the record that says that the 273A document was expunged and sealed. If you can point that to me, I would love to have it. I don't see it. I don't have it. Do you want literally the document? I want you to tell me where it is in the record or give me a 28-J letter afterwards or something. Thank you. First of all, the district court found there was only one arrest charge, so there's no question that there's only one. As a matter of law, the statute, 851.8, is very clear. If you're found factually innocent of the arrest charge, all arrest-related records are sealed in the court. So it all ties down to the issue of what you were arrested for. You're saying that they were only arrested for the torture charge. 273A is not a torture charge. They were charged in a misdemeanor for something other than the torture charge. But that was after the index listing. Okay. But the reality is it shows up in the record. It's not been expunged. So even if it were just out there independently, the reality is that the Department of Justice could consider that, because it deals with child abuse, it could consider that in connection with whether the listing was appropriate, right? No, that is not right, Your Honor, because under the Child Abuse and Neglect Reporting Act, it's very clear how listings are created and on what they're based. Penal Code Section 11169A1 specifies exactly how a listing is created. It must be based, one, on the active investigation of the reporting agency. Here, there's a dispute as to whether the investigation was active. But separate from that, that investigation was completed on April 17, 2001. That file, as of April 17, 2001, is the very file that's referenced in the index, because the form submitted by the Sheriff's Department that day, called SS-8583, specifies that file, that date, April 17, 2001, and it's that file. And I can totally ---- Okay, well, you can maybe get this for me later, because we're over time, and I still don't have an answer on the plus, and then I know Judge Biby wants to hear the other. On the plus, I can give the Court a specific bar. If the Court wants to hear how the Humphreys are barred by this listing, if he's able to ---- By operation of law, how are the Humphreys barred from practicing something for which they need a license? Compare that to Miller, for example, where you don't have that situation. Well, Paul v. Davis applies whenever your status under State law is to ---- Right. So let me give it to the Court, because the clearest example comes up in the context of preferential child placement. As a person in the State of California has a preference, that is, if you are a relative of a child who's removed from a relative, you're given first consideration when placing that child who's been removed. Now, is that right? In other words, in order to have a plus factor, can it be something that, at least in theory, the Humphreys may want to do, or does it have to be something that they have actually tried to do and been denied the right? This is an injunction action. This is a threatened harm. I understand. My question to you is, under the Supreme Court's jurisprudence and our jurisprudence, does the fact that the Humphreys may be harmed by something they might do sufficient to satisfy the plus, or does the very fact that if they do try to do something, that the bar or the investigation exists, is that sufficient? It is sufficient because one need not apply and then be denied in order to have the harm. Here, by operation of law, we know what's going to happen, and the Humphreys don't have to subject themselves to that first. Do you have any case law authority that confirms that view? I'm sorry. I cannot cite a case right now, but there is case law, and I'll be happy to provide, if the Court will allow me, a supplemental letter that gives precise cases on that. The Supreme Court has said it, and this circuit has said it. If you have a threatened harm like this and a due process violation, and especially here, we haven't even got to substantive due process, but there is an ongoing violation because the Humphreys who are adjudicated, the allegations were adjudicated false, remain listed. They are custodial parents. They remain listed as substantial children. Why don't you put that in a 28-J letter so we can get to Judge Bybee's other. I just want to give, oh, thank you. I'm going to move off of stigma plus. I'm very interested in that one as well. I think we sort of covered it. I'd like to know what the import of the Burt case is on this. Thank you. The Burt case found a protected liberty interest created by California law. The California law involved in the Burt case was not a statutory provision. It was Article I, Section 1 of the California Constitution, which provides. Counsel, if Burt is as you have represented it, then we don't even have to get to stigma plus, do we? That's correct, Your Honor. If any of the other four protected interests are, as the appellants argue they are, there is no need to decide stigma plus. Stigma plus is just one of five protected interests that we assert. In Burt, the California court ruled that this index implicates both familial privacy interests and informational privacy interests that the California Constitution protects. And before those interests are taken away by the index or intruded upon by the index, a person is entitled to notice and hearing, a name-claim hearing. Now, or a prompt. Actually, Burt doesn't define the kind of hearing. It says a prompt hearing. A similar case in the Third Circuit found the same kind of thing in New Jersey. Counsel, I'm looking at, oh, it's about the third to the last paragraph in Burt. And I have to tell you that I find Burt analytically sort of a myth. I'm not sure where the court is claiming from. But I do find sort of this third paragraph that begins here, plaintiff is merely asserting a right to an opportunity to appear and rebut the charge. And the final sentence says, we thus conclude the act's reporting limitations, notification requirement, and expungement remedy impliedly recognize that a person named as a suspected child abuser is entitled to present a timely challenge to a previously filed report. Now, I don't know whether that creates a liberty interest or not. It seems to create some opportunity to rebut the charges. And maybe that's all that you're asking for here. In other words, the denial of process, the liberty interest you have here appears to be more process. So you've been denied process on your process, I guess. I'm not sure what it is that the court is holding here. The Burt court blended two liberty interests. Oh, at least. At least. But the two that are really germane here is, first of all, the primary liberty interest, which we haven't addressed, asserted by the Humphreys, is that the statute camera itself creates constitutionally protected liberty interests. And it does so through the provisions to which the Burt court alludes. But it does so in very specific language, and it creates two very specific liberty interests that matter here. Separate from the April 2001 reporting, the third sentence of Penal Code Section 11169A-1 says that if a report that's been filed proves to be unfounded, it shall be removed. DOJ shall not retain it. Right. And that's what Burt was talking about. Let's suppose that I doubted that that created a liberty interest under the Constitution. But I am interested in what Burt tells us has been created. What right do your clients have under Burt? Under Burt, Burt decided it as a procedural due process interest. It found overlapping protected liberty interests. But what is it that your clients have a right to? We say that in terms of under Burt. Burt doesn't say they have a stigma plus. No. What does Burt tell us? Our clients have the right to, under Burt, a hearing to clear their names. Okay. Have they requested a hearing to clear their names? Oh, before this case started, we asked. Is that the liberty interest that Burt gives us is a hearing to clear their names? The actual protected interest that Burt recognizes is privacy. And the procedure was unspecified but generally described as a name-clearing hearing. And the court left to the lower court because that was never reached. The case was dismissed before the lower court got there to devise what hearing would be appropriate. So they never got into the kind of analysis that would occur at that point, the circumstances involved in the particular case. But it's a procedural right, not a property right at best that Burt creates, right? It's not a liberty interest, but they recognize procedural due process because of a protected liberty interest in informational and familial privacy, which is created under the California Constitution. How does that square with Paul? Chief Justice Rehnquist was concerned about expanding 1983 into a federal tort law. California's Constitution is just chock full of nebulous phrases that could be expanded almost indefinitely and usually are. Does that mean that all somebody has to do is to find a predicate in the California Constitution and voila, you've got a liberty interest? Well, not exactly. Paul discusses a very different kind of liberty interest, first of all, stigma plus. And Paul specifically said... But it dealt with the facts. Actually, Paul distinguished these facts altogether. Paul said that if one were faced with a kind of substantive right, that is, and it specifically says this, and we cite this in our brief, familial relations, relationships with children, those kinds of rights don't even require a showing of stigma plus. Yet in our Miller case, the court didn't agree with you. Miller dealt with a grandfatherly situation. And Miller specifically distinguished the fact that this was... Well, these were a step-grandfather, as Mullins would say, if there is such a thing, and a grandmother, there was a dispute between them and the parent of the child. The court said, number one, the Supreme Court does not recognize a custodial grandparent substantive right. The court said Miller asserted only an alleged substantive due process right. So you distinguish it on the facts as opposed to the fact that Miller doesn't deal with Burt. Miller precedes Burt. And I've read the briefs in Miller. The parties never raised anything other than a substantive due process, a supposed substantive due process right based on familial association. They didn't have a substantive due process right in the first place, and they didn't even attempt to raise procedural due process until a reply was raised. And the court said specifically, we're not going to address that. So Miller just didn't deal at all and expressly declined to deal with the kinds of issues we're facing here. And the Miller court did say, of course, custodial parents do have a fundamental right to the care of children. Right, that's been established. And this index listing really invades that right. Right now, the Humphreys remain, despite the juvenile court, the very court with exclusive authority to determine whether the parent abused a child and the child was in danger, that court found the allegations not true. And despite that, none of the court's findings, that is not the penal, separate from the criminal court, if this court is unhappy with what the criminal court did, look at what the juvenile court did. The juvenile court looked at the very allegations. And that's a very material fact, which was simply disregarded by the district court. And that fact said, these allegations are not true. The very same allegations. This was a court making this finding based on a presentation of evidence. And the county never appealed that finding. That is subject to collateral estoppel. But with that finding, and although we notified the Department of Justice and we notified the county that the allegations are now proved, it's important to look at the words of the statute. The statute allows the investigating agency to determine initially whether a listing is not unfounded. It's complicated. What remedy would you seek if the court were disposed to find a liberty interest pursuant to Burt? What remedy would you be seeking? If the liberty interest were pursuant to Burt, then the Humphreys would be entitled to an impartial review, if it were under Burt, of the rightness and accuracy of the listing and the underlying files and the maintenance of the listing and underlying files to agencies. Would it go back to the district court? Well, do you mean to determine the bounds? The district court has never addressed what kind of hearing. But that's what you're asking for. If the court would like to address that, I suppose this court could. But that has not been handled in the first instance by the district court. The district court didn't get there, although the district court found globally that the Humphreys were currently protected under current procedure, and we've disputed that as well. But, in fact, analysis-wise, the district court really didn't get to that second step of the procedural due process. Counsel, I think we probably ought to hear from the State. I do have one last question that I would like to ask you now, and we'll give you some time for rebuttal, but I do think we need to give some time to the State this morning. This is here on – as I understand it, the procedural posture of this case is that we are only here on the 1983 actions. Is that correct? Although you have requested an injunction, we are not here on the injunctive relief. Is that correct? We're here only on injunctive and other relief under 1983 with respect to the index because the summary judgment order of the court disposed of entirely any possibility of injunctive relief. The only remaining cause of action, subsequent to the summary judgment order, is the 1983 action with respect to removal of the children. The district court dismissed the State claims. Judge Reel, before the case was transferred to Judge Sumner, dismissed unequal defense. Let me ask this. If this court were to decide that it is clear that whatever else about the constitutional rights may or may not be clear, it is at least clear that these defendants did not violate any clearly established constitutional rights and therefore were entitled to qualified immunity, what would remain of the case? The qualified immunity claim relates only to two of the defendants in their individual capacities, the two sheriff's deputies in their individual capacities. Qualified immunity doesn't apply, of course, to the county, and it doesn't apply to us. So it wouldn't resolve anything, is your position? We would still have all of these questions still before us. It depends on the grounds. That is, the court could find that there was a protected liberty interest. I've given you a different hypothesis. I understand the constitutional question. I'm giving you a different hypothesis, which is, irrespective of the shape of any constitutional right or whether there even is a constitutional right, assuming there's a constitutional right, it's clear that these defendants, the individual defendants, have not violated any clearly established constitutional right. If this case is anything but clear and therefore are entitled to qualified immunity, does that resolve anything in this case, or do we still have to solve all the hard questions? That resolves something in the case. That would support the district court's partial summary judgment with respect to Wilson and Ansberry in their individual capacities. Okay. But it would still leave us with all the hard questions with respect to injunctive relief against the county. Is that right? It's injunctive. It's all relief, injunctive. It's all intertwined. We ask for injunctive declaratory relief and damages with respect to the listing and damages. So your position is if we were to decide the qualified immunity of the two individual defendants, on the second step of the sauté, it still wouldn't solve any problems. We'd still have to answer all the hard questions. It doesn't. Well, our position is that the question really shouldn't be too hard with respect to a constitutionally protected interest. One need not find a constitutional right to find a constitutionally protected interest. A constitutionally protected interest can be created and held. I understand. But if that's part of the hard question, then yes. The court would still need to address and resolve whether or not there's a liberty interest or property interest that's protected by the Constitution. And that's really, at that point, if the court were to find a liberty interest or property interest and say, but, you know, it's not clearly established, then the individual defendants are gone, but the county and the state remain as defendants. Okay. All right. Thank you. Thank you. Thank you. Good morning. Paul Epstein, Deputy Attorney General representing the state of California. At the outset, I'd like to say Ms. Lily Hsu represents the county and the sheriff's detectives. She's going to take 10 minutes of the time allotted to our side, so I will take 10 minutes and then turn it over to Ms. Hsu. Thank you. And Ms. Hsu is going to address the issue of the effect of the sealing orders. At the outset, I think the linchpin of this case and why the summary judgment should be upheld as to the state is there is no plus here. Paul v. Davis does apply and says that you have to have more than simply the stigma. Now, despite the fact that the appellants obviously claim otherwise, I'd cite the court to their reply brief at page 26, and they say, the Humphreys have suffered deprivations of constitutionally protected interests since the moment Wilson decided to submit the 11169 report. Page 22, did you say? 26. 26. That tells us that what they're really complaining about is they just don't want to be on the list, and while that's understandable, there isn't a protected liberty interest in not being on the list. And saying that there has been a deprivation since the very submission of the list shows that that is what their real complaint is. Ms. Rustin, if all the government was doing was sort of maintaining a file, just like a detective would maintain a file in his head or have things on index cards in boxes lying around the office, that might be one thing. So if all we did was just sort of had a back file, a shadow file someplace that said, well, it didn't pan out and it doesn't look like there was much evidence, but just in case something happens in the future, we ought to know that these folks were once, we once got some adverse information and it doesn't look like it panned out, but let's just keep it around just in case. I think that would probably fall pretty clearly within Paul versus Davis. What troubles me is that there are additional consequences, and it's not limited just to the police department. It's not just the police. It's not just the detective maintaining the information in his head that says, oh, yeah, I went out to the Humphreys' house one time and investigated it for something that didn't pan out, but I remember them. All of a sudden we have licensing agencies that by state statute are required to conduct, to consult the CACI, and it's not clear to me exactly what they're going to do with that information, but I certainly can imagine what they're going to do with that information. And that starts looking like there are additional consequences to having that information on file. Well, obviously the statutes provide that the county agencies, in case of determining whether to license the appellants, do get access to CACI and can consider the information. However, there is a procedure in the Health and Safety Code that says that if the DSS, the Department of Social Services, denies a license based on a CACI listing, the applicant is entitled to a hearing under the Administrative Procedures Act of the state. This gets to the interesting and very troubling issue to me under the reasoning of the Valmonte case, the Second Circuit case. By a quick review, it seems to me that almost every license for which, or permit for which the Humphreys might apply, there is an administrative procedure to try to determine whether it in fact is, there is sufficient information, sufficient charges that have been proven or otherwise, to warrant, to keep them on the list, if you will, or to deny them the license. In Valmonte, the court there concluded that the very fact that they had to submit to such a procedure was sufficient to create a liberty interest. You had the stigma, but the plus was they were caught in a Catch-22 because even though they may be factually innocent, they still have to go through this procedure, which is in and of itself intimidating. You never know what the result is going to be, and that that constitutes a plus interest. What's your comment on that? Respectfully, I would disagree with Your Honor as to what Valmonte said. I've got Valmonte here. Okay. Tell me why. The Valmonte court said, that here the injury associated with the central register is not simply that it exists or that the list is available to potential employers. The deprivation stems from the fact that employers must consult the list before hiring Valmonte, and if they choose to hire her, must state the reasons in writing to the state, which is not under the California law. You don't have that here, the writing part, certainly. That is critical. And also, the court went on to point out that we also recognize the Supreme Court has given indication that perhaps only those who are defamed while in the course of being terminated from government employment can state an action for deprivation of a liberty interest. Why is the fact that the agencies would have to indicate in writing why it wasn't hiring people in New York, why does that matter? Well, it puts an additional burden on the employer. If you have to state in writing why you're not hiring someone, I think you might be. But for purposes of the people that were listed on the comparable index, what difference does that make to them? They're still stigmatized. They still have this burden of having to jump through the hoop whenever they want to get a job that requires some kind of a license. Well, the stigma is not sufficient. I understand that. And the court said the plus is that the employers have to consult the list and they have to state the reasons in writing for not hiring, and they also have to tell the person listed why they're not being hired. Okay, but here you have a situation where you have two people who, based upon at least possibly two courts' determinations, are factually innocent of anything. So some judicial officer or officers have made that determination. They're on a list that not only stigmatizes them, but by definition is going to have a clear impact on their employability. The Crittenden officer provided an affidavit to that effect. Why isn't that a plus? Why shouldn't that be the law of the Ninth Circuit, that that satisfies the plus interest? Well, the Ninth Circuit law, as far as finding a cause of action for denial of a protective liberty interest, is that if you're basing it on reputation, the injury to the reputation must be... No, no, no. It isn't that. I understand that that's the stigma part. I'm just simply saying that, like, what's interesting to me about the Belmonte cases, although it is in no way binding on us because it's the Second Circuit, it seems like the statutory schemes for licensing and handling things are very close. I mean very, very close. And I just... This is a true catch-22. Franz Kafka would love this in terms of trying to write something about these people. If they're factually innocent and their names are on a list and they can't get off the list because they can't show the plus harm, I'm interested in what the state's position is as to why the reasoning of Belmonte isn't persuasive and fairly comparable to what we have here. Well, I don't think it's comparable because of the additional factors that the court... There's a stigma plus here because employers have to inquire, certain employers have to inquire whether applicants for license are on the list. They said they have to inquire and they have to state in writing to the state. But under California law, the licensing agencies have to inquire with KACI. True. And you just told me that if DSS denies a licensing hearing, now that DSS is not the only licensing agency. That's true. You told me that DSS denies license based on KACI, that you're entitled to a hearing. Well, that's sort of comparable to getting reasons in writing, isn't it? Isn't that pretty close? By the way, I'd like to know what the health and safety code section on that is. Let me get that here. It's 31526. Sorry, 315? No, excuse me, three different sections. 1526. Okay, 1526. 1596.879 and 1596.887, subsection A. What was the last one again, please? 1596.887, subsection A. Did you answer Judge Bybee's question because I'm interested in that too. Why isn't the requirement of a hearing where there would be some reason given for the denial of removability from the list, why isn't that comparable to the Val Monti written statement as to why a person was still going to be on the list? Well, the Department of Social Services isn't the employer, first of all. And secondly... It determines whether you can get a job. But what the appellants are complaining about here is we don't have sufficient procedure. Well, there is procedure right there that benefits them, so I don't think they can come in and say, well, we want procedure, but we don't like this procedure. If I understand your argument, counsel, you're not arguing there that they don't have a right. What you're arguing is that we have provided for sufficient process. Right. And then they can't come back and say, well, that proves that there's a violation of a constitutional right. Okay, now, does this provision cover all of the licensing agencies that will consult CACI? My notes, as I have them here, says only the Department of Social Services. Okay, so the problem is that then we have other licensing agencies that also by law must consult CACI and don't have a comparable provision requiring them to provide a hearing. Now, I don't know that they specifically that they do. But you don't know of any evidence that they do. However, that's putting the cart before the horse. If there's no plus, we never get to the question of adequate procedure. Counsel, as I sit here and listen to this argument, and as I have read these cases and spent a lot of time thinking about this case over the last couple of weeks, and as I sit here today, did anybody try mediation, and why doesn't the State just pull the Humphreys' names off the list to be done with this? Because the statute, I have to let Ms. Hsu take over, the statute requires that the detective who did the investigation has to make a finding of unfounded. Well, why doesn't somebody go to the detective, take the records from the juvenile proceeding and the criminal court, and say, hey, would you like to reconsider this? This is proving to be a lot of trouble, and it doesn't look like these folks are worth having on the list. Well, if there's a procedure for that, I'd encourage the appellants to do it. Mediation is one possibility. It sounds like it's your employee, not their employee. Well, it's up to the detective. The State has to follow the statute unless it's told that it's illegal. So this is Ms. Hsu's case? Yes, it is. And I'm taking two minutes of her time, I'm sorry. All right. I actually, I would like to make sure that I have a chance to address the dependency court's not true determination and the sealing orders, because the court was asking some questions about that. But first, I actually would like to put in the county's two cents on this question about how Valmonte is different from this case. I think the difference here is that in Valmonte, there was a statutorily imposed impediment. Well, why don't you pick up with the question that Judge Biden ended up with Mr. Epstein, so we can keep this continuity. Oh, okay. Why doesn't the county just request that the Humphreys' names be removed? Did anybody think about mediating this case? Did anybody think about saying, gosh, you know, now we've gone to all this trouble, why don't we just pull the Humphreys' names off here? It doesn't look like there's really anything here. And if that requires you to go to the detective, it sounds like the detective is the linchpin here, and that the only person, and he's probably not even in the room, and maybe hasn't even been spoken to. But why doesn't somebody just go and say, wait a minute, this just doesn't look like these folks belong on this list. Does the county have some explanation as to why they do belong on the list, after we've had two proceedings before two different tribunals that said that they were factually innocent? You don't believe the courts? Well, actually, okay, so maybe I should address that first. I wish it had been addressed two years ago, but that's okay. We'll take it up this morning. Well, I wasn't trial counsel on this case, and my understanding is that there were talks of that sort and that they came to a standstill. Can the county offer any explanation today as to why it's important for the county and for the children of the state of California to maintain the names of the Humphreys on this list? Can you offer an explanation, which an explanation might be, yes, they're factually innocent of the felony, but there was still a misdemeanor charge, and we dismissed it, but that doesn't mean that there was no evidence. That would be an explanation. Does the county have an explanation? Well, one explanation is that, okay, the dependency court found that the allegations of the dependency petition, which were basically the same as the allegations in this case, were not true. But not true doesn't mean literally not true. Basically... It doesn't? Well, no. It sounds very different from not guilty. Not true is very different from not guilty. We have a judgment of not guilty here in our system. We have other systems. Scotland, for example, does have a third procedure in which a jury can come back and say factually innocent, and that's different from not guilty. Well, okay, the finding of factually innocence is a separate thing that goes to the... Right. But when the juvenile court comes back and says not true, okay, it didn't use the words factually innocent, but when it said not true, what did we think that that meant? Okay. Well, first of all, our position is that the court wasn't actually authorized to find the petition allegations not true. It was either authorized to find them true or not proved by a preponderance of the evidence. But aside from that... So it's an extrajudicial finding. Well, no. What it was supposed to, if you look at the statute, the California Rules of Court, 1450, sections F and H, which we cited in our brief, the dependency court was authorized to find the petition allegations true or not proved by a preponderance of the evidence. They weren't literally authorized to find the allegations, and it's quotable not true. But aside from that... Wasn't there a separate petition? Maybe that was in a different court, but wasn't there a separate petition actually seeking such a determination that it was not true, that the facts were not true? It seemed to me, my recollection may be faulty with a lot of information in this case, but my recollection was that the Humphreys at some point asked one of these courts to make a finding that it was not true and the court complied. Am I mistaken? Maybe I can clarify. There were two proceedings here. One was the dependency court proceeding, which sought to basically remove the children from the home, and the other one was the criminal court's proceeding. In the criminal proceeding, the Humphreys petitioned the court for a finding of factual innocence, which they received, and I have some words to say about what that means. But in the dependency court, the outcome of the dependency court proceeding was that the court found the allegations against the Humphreys, quote-unquote, not true. And our position is that the court wasn't really authorized to make that finding, but let's say it was. Even if it was, not true doesn't mean literally not true or false in an absolute sense. What it means, if you look at the statute, it means that the allegations were not proved by a preponderance of the evidence. Okay? So there wasn't enough evidence to meet the preponderance of the evidence standard. So plaintiffs here are arguing that that has collateral and estoppel effect on this proceeding, but our position is that it doesn't, because the question here is, does this finding of not proof by a preponderance of the evidence mean that the Humphreys have to get off the list? Well, for them to get off the list, the county would have to notify the DOJ, the Department of Justice, that the report against the Humphreys was unfounded, and unfounded means false. And the definition of false is... Sounds like not true. Well, actually, the statute, the Child Abuse and Incarceration Reporting Act statute, it doesn't say, it doesn't define false. It doesn't specify a burden of proof. It just says that allegations are, that someone should be removed from the list if the allegations against them are unfounded. And unfounded means false. It doesn't say what standard of proof. It basically says that the investigation... Where do you get that unfounded means false? Is that a statutory finding? Is that a statutory definition? Yes. That's in the statute itself. And... Where is that, please? I believe it's... It's 11165.12. It says... 11... 11165.12. It says, unfounded report means a report that is determined by the investigator who conducted the investigation to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect. Okay, so it can be any one of those four things. Right. Now, so you've got this officer that's investigating, but then you have courts above the officer that have reviewed that. Are you saying that a court that has analyzed the same facts does not have the ability to come to a different conclusion and contradict this? Or does this officer, Ms. Wilson, I think, right? Yes. Wilson is the determining factor for all time. No matter what any court says, what Wilson says goes. Is that the law? Well, I guess it depends on what you mean by goes. Because, in a sense, he does determine whether they're on the list. It sounds like Wilson's the only one who can take it off the list, right? Well... The fact that we have two tribunals in California that have made a not true finding evidently is not sufficient to take it off, to get Humphrey's name off the list. It looks like everything turns on Officer Wilson. Well... Has anybody talked to Officer Wilson? The statute actually doesn't say who should notify DOJ that the report is unfounded. So, actually, that's one of the reasons why Wilson would be entitled to qualified immunity. Because it doesn't say that he has to do follow-up and notify the DOJ. But this is sophistry. It's just sophistry. Every second you talk makes me think more and more this is a plus. Because the reality is you're saying that Wilson, whoever Wilson is, police officer, investigator, is God for purposes of this case. He makes the determination. It doesn't matter what the dependency court says. It doesn't matter what juvenile court says, what anybody says. What he says goes, and nobody gets off this list unless the original investigating officer does it. What if he dies? I'm not suggesting he will, but if he did, who then determines it? Is there something in the statute that says who takes the place of Officer Wilson for purposes of getting somebody on or off this list? The statute doesn't say who should. So, he can't get off, right? Could the county here have said, look, these folks don't have a right to a hearing. They don't have a right to have this taken off. But the Humphreys have gone to a lot of trouble here. And as we look at the records, you being the counsel's office, we've had two courts that have said that the charges are not true. Maybe somebody should wander down the hall, talk to Officer Wilson, and see if he has something else in mind. If he does, then let's leave him on the list, and let's go fight this thing to the nth degree. But if Wilson doesn't have anything else in mind, maybe he would agree to send the report over to DOJ, and we could be done with all of this. Would the county be amenable to trying to mediate this case? We have a mediation service in San Francisco. They're very good. Well, my understanding from my trial counsel is that the county was willing to mediate, and that it wasn't the county that caused things to come to a standstill. And the statute that you just referred to, the 11165.2, doesn't just say false. It's false or this or that or the other, one of which is that it's improbable that child abuse occurred. So the fact is a court has determined that it was not true. That certainly is at least equivalent that it is improbable that child abuse occurred. Wouldn't you agree? Well, the statute says inherently improbable. Inherently improbable? In effect, that's what not true includes, right? Well, the list isn't an adjudication of guilt. It's basically an investigative tool that basically allows tracking of possible child abuse. And the Hodge case, which we had cited in our brief, says that even having reports that are inconclusive or unsubstantiated can be useful as an investigative tool because child abuse is very, very difficult to prove. So if you had 50, let's say if you had a large number of unfounded or, excuse me, inconclusive reports, then it could suggest a pattern of abuse that would otherwise be difficult to prove. So in other words, the purpose of the list is not the same as the court determination. You know, Officer Wilson will never forget the Humphreys. They will always be in the back of his mind and maybe others that worked with Officer Wilson. But Wilson retaining that information, there's nothing we can do to erase Wilson's mind. But the problem is that Wilson's impressions and his instincts and his willingness to send the report over to CACI in sort of a routine way has had enormous downstream consequences for these people. Because now we have every licensing agency in the state of California under an obligation to consult this index. And if they find this information, some of them, according to Mr. Epstein, have a responsibility to reveal that they've looked at CACI if they deny the license, after which the Humphreys do get a hearing. And we have other licensing agencies that don't have to reveal this and can simply deny the license. And then the Humphreys are put to all kinds of additional trouble to try to explain that notwithstanding the fact that we had two California courts that the charges were not true, they're still on somebody's list. Well, the statute doesn't, the statute does say that licensing agencies need to consult the list before they hire someone. But it doesn't say what they have to do with the information. That's true. But Ms. Hsu, if you were a licensing agency and you found names on the CACI list, what would you do with the information? Well, the statute says that they have to conduct an independent investigation and review the information. And do what? Get to find out that two courts have reviewed this and said it was not true? And then the licensing agency is going to stand around scratching its head saying, what do we do now? These folks' names are still on the CACI list, and why? Because two California tribunals have said it's not true. Why is California maintaining evidence that apparently isn't true? Well, if they believe that, then they could go ahead and hire the huntress, and there's nothing in the statute that prevents them from doing that. What I haven't heard either the county or the state say is that these folks were only found not true of the felony. And it's possible that they did something, but it was only a misdemeanor. That charge was dismissed, but there was some basis for it. Is the county prepared to tell us about that situation here? I'm sorry, could the owner clarify the question? As I understand it, and Judge Smith had a long colloquy with Ms. Boynton about this, but as I understand it, the Humphreys were arrested on the torture charge. Right. And then they were later charged with misdemeanor. Right. The court dismisses the torture charge as not true. Right. The misdemeanor charge is later dismissed as well. Okay. The records are sealed as to the arrest records are sealed. The arrest only related to the torture charge. We have this sort of lesser included misdemeanor here. Right. If Officer Wilson's concerns that there might be some evidence to support a misdemeanor charge, which even though not successful and not prosecuted, it means that it's worth having the Humphreys' names in the list and sort of a watch list. Yes. Well, that is part of it. Also, it's not the plaintiffs were charged with misdemeanor charges, but they were actually arrested for two charges. The arrest warrant shows that they were arrested for the Section 206 felony torture charge and a Section 273AA cruelty to a child charge. Actually, I would like to give the court a citation that was inadvertently omitted from our brief. I apologize for that. On page 55 of our brief, we said that plaintiffs were arrested for both these charges, cruelty to a child and felony torture charge, and the citation should include excerpts of record 149 and the supplemental excerpts of record 22 and 28. That's Detective Wilson's declaration and the arrest warrant. If you look at the arrest warrant, it will show that the plaintiffs were arrested for cruelty to a child as well as felony torture charge. And also, the plaintiffs mentioned in their reply brief that they take issue with the validity, with the accuracy of the warrants that are attached because there's a supplemental report that was accidentally attached to the arrest warrant. Detective Wilson's declaration, which is that excerpt of record, page 149, explains exactly what was attached to the warrant affidavits, and the supplemental report of April 17, 2001, is not one of the things that he mentions were attached to the warrants. So that supplemental report was accidentally appended to the warrants. So I apologize for that mix-up in the record. But the bottom line is even if the record isn't as clear as we would like, it is clear from looking at the warrants that plaintiffs were arrested on two charges and the finding of factual innocence only related to the felony torture charge. And the plaintiffs have said that... So you're agreeing with the question that I raised with opposing counsel. You're saying that my initial understanding was correct, that the extinguishment and sealing order applies only to the 206 charge. Is that correct? Yes. I agree with... Yes, that's right. And because it applies only to the 206 charge and they were arrested on another charge, you can't expunge the arrest warrants. And the People v. Matthews case, which is cited in the reply brief, actually says that because you can't surgically excise one arrest charge from the arrest records because the arrest records pertain to both charges, you have to keep the arrest records. And the statute, Section 851.8J, says that if records pertain to other arrests, you have to redact the records to omit the reference to that particular arrest. Certainly these arose out of the same set of facts, right? I think you all admitted that in your reply brief. Right. But what I'm saying is because there were arrests on two charges... I understand. One doesn't get expunged. But does the fact that it was not expunged have any bearing on Officer Wilson's determination under 11165.12 as to whether Humphrey's name ought to remain on this list? Well, yes, it is still on there. I understand it's on there. But the fact is you've got a court, two courts, determining that the facts underlying the charge, and you admitted it was the same factual background, are not true. Is there any reason why the fact that the one record is not expunged has any bearing on this? Well, it could. The arrest records are still out there, and there's nothing in the arrest records that's been contradicted. And the misdemeanor charge was withdrawn. That's right. Well, the misdemeanor charge was withdrawn because the VA basically didn't think that they could actually win the case. But the fact that they didn't think they could win the case doesn't necessarily mean that the plaintiff shouldn't remain on the list. Because, again, if there were, let's say the Humphreys ended up on the list 50 times, even though it couldn't be proved in court by a certain standard of proof that they had abused their children, that would raise suspicion of a pattern of abuse. So, in other words, the list is not performing the same function as a criminal proceeding. It's not an adjudication of guilt or innocence. It's just a reference tool that is basically a reference tool that permits, that facilitates further investigation. You seem like a very nice person, and I wish for you that you may never get on a list like Kaki. And that you will never have to experience what the Humphreys have experienced. Because what your interpretation of the law is, and I respect what you're saying, and may or may not agree with you, creates a nightmare. It's a Kafkaesque nightmare. And I think that the county and the state's position on this is, at the very least, unfeeling and not very practical and hard, and it may regret that it didn't mediate. Anything further, Ms. Hsu? No, thank you. I'll add one more. Yeah. I believe Judge Smith brought up Justice Rehnquist's concern in the Paul v. Davis case about federalizing all torts. And that's what's happening in this case. And it's proved by the fact that the Humphreys did file a state law action after this case was filed. As far as I know, the complaint was never served, but they filed an action seeking a written mandate in state court, taking their names off the list, and also for injunctive relief. That should be their route in this case, not a 1983 lawsuit. Secondly, just to be clear, you are hearing from the state that the finding of factual innocence does not apply to the misdemeanor charge. It only applies to the torture charge. The statute provides that the finding of factual innocence can only apply to the charge for which you are arrested. So the misdemeanor charge is not part of the factual finding of innocence. And I would – I believe Judge Smith brought this up. I do think that the fact that the misdemeanor charge was not found, not true, would be relevant to a detective's determination whether or not to agree to take the name off the list, because it suggests that there was – it makes it more likely that there was substance to this case than if all the charges were found factually – they were found factually innocent of all the charges. Secondly, there is a procedure in the Child Abuse and Neglect Reporting Act that provides – the listing will automatically be deleted if there are no more reports about this – about these – It's after 10 years, though, right? I think there's a provision that a five-year period as well as a 10-year period. It could be 10 years. Yeah, I can say if you have a side on that, I'd be interested. I think it's 10 years is my record. But I think that answers the question, well, is Officer Wilson some sort of god? No, he's not some sort of god. He's a 10-year god. That's appropriate in this case. He's not quite an Article III judge, so he doesn't have life tenure. Child abuse – and I appreciate the Humphrey situation. I wouldn't want to be on the list, but child abuse is such an important problem and is so prevalent that other courts across the country have recognized that simply because someone hasn't been proven not guilty beyond a reasonable doubt doesn't mean that the name should not remain in the index. And Ms. Hsu made a good point about a pattern. If you get report after report after report about the same people, that's certainly valuable to have that information. No question about it. And child abuse is a horrific problem. But the issue before us here is, in our constitutional framework, whether people in the Humphrey situation have to just dangle from the yardarm back and forth for 10 years waiting on Officer Wilson's lunch outcome and how he feels in a particular day. There must be, presumably, some way to review the bona fides of somebody being on the list. That's what we're really struggling with here. I respect what you're saying. I respect what other counselors are saying. This is a hard case. It's a very hard case. And we have all struggled with it. I am struggling with it. But when I said what I did to Ms. Hsu, I was simply trying to impress upon you the fact that we're all human beings as well, and we look at this on what the real world impact is of what you're doing, what we're doing, what the other counsel is doing. And that's why I think that what Judge Bybee's recommendation about mediation was, I thought that was an excellent suggestion. Because the reality is, you know, you may turn out to be successful, but if you're not, you're going to have a precedent established here that's going to change the world for you. And you may want to keep that in mind. We will keep that in mind. One more point. Judge Bybee, I'm sure, understands this correctly, but just to make clear, the disclosure of the TACI information isn't to any licensing agency. It's only to licensing agencies issuing license to applicants for employment in a position. Involving children. Right, involving children. So that's a very narrow area, obviously. And I think the fact that this. Including positions for hundreds of thousands of teachers in the California system. I mean, it covers a lot of people. I understand it's not every agency. This is Humphreys was not denied renewal of her teaching credential because of this listing. I had to go through an extensive and expensive procedure to get that. The teaching credential, the commission on teaching credentialing is not given access to TACI information. And that's in the record, a declaration. I'm sorry, the teacher credentialing is not? The teacher credentialing commission does not have access to TACI records. Yeah, I don't remember seeing a record. I believe it's the declaration of Peter Delgado. Yeah, I think you're right. So, with that, I'll. Okay. Thank you very much. Thank you very much. Ms. Boynton, if there's anything that absolutely has to be corrected, we'll give you a minute. But the first question is, are the Humphreys willing to mediate? Thank you, Judge Feige. We have not only been willing to mediate. We have met with a mediation judge in the district court, in this court. This appeal was delayed because of that. We have repeatedly asked for relief. And there has been no relief. And the government's position has varied from time to time. But even at the beginning of this case, we tried to do that. There have been a number of just plain wrong statements made about this statute. Number one, under the government's view, Detective Wilson is God forever. The provision allows for 10-year deletion only of a certain kind of report. And those are called inconclusive. The site is Penal Code Section 11-170, Paren B, and then Paren A-3. It's little A-3. That allows unsubstantiated or inconclusive reports and only those to be removed after 10 years. Substantiated reports like the Humphreys are kept forever. Forever. Another incorrect statement is with respect to the arrest. Detective Wilson is God forever. Forever. It's getting theological. It's theological. Forever. Is forever kind of like not true? Thank you, Judge Mills. I don't know the answer, though. As for the arrest, Judge Smith asked me before if I could think of a document. And as I sat at the table, I thought of a document. This is one that deals with the misdemeanor charge? Yes. First of all, there were not two dismissals. There was only one dismissal in the criminal court. At that point, there was only a misdemeanor charge still in effect. But the key as to what they were arrested for is in the testimony of a Department of Justice employee in the criminal history section, Mr. Rodriguez. And Mr. Rodriguez admits in his deposition testimony that the Department of Justice, after they got the feeling order, had to create a new arrest record because there was no arrest for anything except felony torture. So after they got sealed with the sealing order, the Department of Justice created a new, and I'm putting in quotes here for the record, charge, which they call miscellaneous. They had to invent an arrest record. I think I remember reading that. Do you have the ER site on that? I have it. I brought it up. If you look at page, I'm sorry, it's Excessive Record, Volume 2, and the testimony is page 549. And it talks about they couldn't keep a record. The Department of Justice policy is they get rid of the entire criminal history because they know what 851.8 says if the arrest is expunged. And because that would have required getting rid of everything, they created a new record. And the new record would be for the 273 charge? Well, they didn't even do that. I took that deposition. I said, what's the charge? We had never seen it. We learned about it at the deposition in the course of this case. So even after we, first of all, before the case started, of course we tried not to litigate. And we were told there was nothing we could do. So this litigation happened. After I was told, and this is in the record in my declaration, that if we got a finding of factual innocence, maybe then the sheriff would take us out. So we did that in the course of this case before serving the action. We filed the case because of concerns over statute of limitations. We get a finding of factual innocence. We served the state and the county with the factual innocence order, the sealing order, on the government's own form, 851.8. Thereafter, without notice to us, without notice to the Humphreys, secretly, the Department of Justice invented a new arrest record. We never would have found out about that, except we found out about it in discovery. So there was only one arrest charge. As for the documents that the county just cited, some of those literally post the supposed warrant, which was never served, and the county's never said it was served. There's no, it wasn't served. But even the county's purported copy of the warrant is clearly erroneous and false because the document, one document, postdates the warrant. It's an investigation report that wasn't even created until after the warrant. The declaration also says that the warrant included things that we know the county didn't have. For example, photographs or a report of the social services agency. It's just not so. I also want to say with respect to another thing that's just wrong, and just wrong. Any hearing that is provided by a licensing agency does nothing with respect to the index listing. All it does is allow a person access to the licensed facility. Now, many daycare operators are private employers. The same thing, they get a copy of an exclusion order. So the state says this employee can't come in. Now, if you or I were a private employer and had a choice of hiring somebody at that moment, would we really wait for the person to go through a hearing, then find that they could come on and hold open that position and not hire anybody? That's just not a real remedy. That's something that Del Monte brought up as well, I think. And Del Monte used the term employer. We are within Del Monte because the term employer defined in Del Monte meant employers, licensing agencies, and adoption agencies. The Hodge case is totally dissimilar. The registry there was, and by the way, I think we're familiar with the cases. Is there anything else? The last, yes. Thank you, Your Honor. One more point. Judge Bybee, the Department of Justice has said that it is precluded by statute from removing this listing. Again, that is just, I hesitate to use this expression, not true. It is not true. There is no provision in this statute, the Child Abuse and Neglect Reporting Act, that tells the Department it cannot take out this listing. And to the contrary, there is a distinction made in the statute between the initial determination, that four-part test, and subsequent proof. And there are two different words. An investigator can only do a determination. The statute says, third sentence, 11-1-59-A-1. After that investigator does that, if the report subsequently proves, proves to be unfounded, DOJ shall be notified and shall remove the report that is distinct from the requirement in the successive provision, 11-1-70, that says DOJ can't keep reports determined to be unfounded. Two separate requirements. No question DOJ can take it out, and DOJ knows and has regulated that not just the investigator can take out a report, because its regulations allow an agency to take it out. I think we are familiar with the statute. Thank you very much. We thank counsel for the argument. The Court is going to take a five-minute recess, and we'll come back and resume and take up the last case. Thank you.
judges: Bybee, M. Smith, Mills